b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| CATHERINE ELAINE PHILLIPS, Plaintiff | CIVIL DOCKET NO. 2:23-CV-01621 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

# REPORT AND RECOMMENDATION

Before the Court is an appeal by Catherine Elaine Phillips ("Phillips") from the final decision of the Commissioner of Social Security (the "Commissioner") denying her Title II application for Social Security Disability Insurance benefits for lack of disability. ECF No. 1.

Because the final decision of the Commissioner is supported by substantial evidence and no legal error was committed, IT IS RECOMMENDED that Phillips's appeal (ECF No. 1) be DENIED.

## I. Background

### A. Procedural History

On September 27, 2018, Phillips filed a Title II application for a period of disability and disability insurance benefits. ECF No. 8-1 at 80. That claim was denied on April 1, 2020, *see id.* at 91, and is not before the Court on appeal.

Thereafter, on March 19, 2021, Phillips filed a second Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of April 23, 2017. *Id.* at 191–96. Phillips's claim was initially denied and denied again upon reconsideration. *See id.* at 125–26, 131–33. Phillips requested a hearing. *Id.* at 135–36.

An administrative law judge ("ALJ") convened a *de novo* hearing. *Id.* at 40–76. Phillips, Phillips's attorney, and a vocational expert ("VE") were present. *Id.* at 40. During that hearing, Phillips amended her disability onset date to April 2, 2020, the day after her first application was denied. *Id.* at 44–45.

After the hearing, the ALJ found that Phillips had not been under a disability within the meaning of the Social Security Act ("SSA") from the amended alleged disability onset date through July 6, 2023, the date of decision. *Id.* at 28. The Appeals Council declined Phillips's request for review, *see id.* at 6–8, and the ALJ's decision became the final decision of the Commissioner.

Phillips appealed the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1.

### B. Medical Records

In 2016, Phillips had gastric sleeve surgery. ECF No. 8-2 at 352. Following this surgery, Phillips reportedly developed nausea, vomiting, and diarrhea. *Id.* at 365.

On May 31, 2019, Phillips presented to Niagara Falls Memorial Medical Center after being admitted to and discharged from the inpatient unit because of suicidal ideation. *Id.* at 344. Phillips had a history of generalized anxiety disorder

("GAD"), bipolar disorder, obsessive-compulsive disorder ("OCD"), and post-traumatic stress disorder ("PTSD"). *Id.* at 345. She reported two suicide attempts in the past two years. *Id.* During her visit, Phillips complained of depression, racing thoughts, difficulty concentrating, and difficulty with her appetite. *Id.* at 345. Phillips stated that going to the store overwhelmed her, and she felt paranoid that people were watching her. *Id.* She smoked daily, drank occasionally, and used cocaine recreationally. *Id.* During the examination, she had "an anxious mood and affect" and "racing thoughts." *Id.* at 346. Her judgment and impulse control were "both moderate with partial insight." *Id.*

That same day, Phillips met with Arthur Downie, ANP ("Downie"), to establish care under him. *Id.* at 21. Phillips stated that she was an outpatient at NorthPointe Rehab. *Id.* She complained of nausea, vomiting, and decreased hearing. *Id.* Phillips completed a depression screening, and her results indicated she had severe depression. *Id.* Downie referred her to audiology and gynecology for further assessments and care. *Id.* at 22.

On June 4, 2019, Phillips went to Niagara Falls Memorial Medical Center for a medication management appointment. *Id.* at 342. Phillips reported that her initial dosage had been effective, but "her mood [was] still all over the place." *Id.* She complained of anxiety, nightmares, and difficulty sleeping. *Id.* During the appointment, Phillips was anxious and hyperverbal, and she had racing thoughts. *Id.* at 343. Her judgment and impulse control were "both moderate with partial to full insight." *Id.*

On June 25, 2019, Phillips went to Niagara Falls Memorial Medical Center for a medication management appointment. *Id.* at 339. Phillips complained that she had been vomiting after eating. *Id.* at 340. During the appointment, Phillips's "mood and affect [were] anxious," her thought process was tangential, and she still appeared to be "acutely manic." *Id.* at 339–40. Her "[j]udgment and impulse control [were] both moderate with full insight." *Id.* at 340.

On August 18, 2019, Phillips presented to Niagara Falls Memorial Medical Center with complaints of a day-and-a-half-long "sharp and crampy [abdominal] pain associated with loose nonbloody or black stools," nausea, and vomiting. *Id.* at 192, 208. A CT scan of her abdomen and pelvis was normal other than a "dilated proximal small bowel." *Id.* at 203, 212. She was discharged with a diagnosis of abdominal pain and diarrhea. *Id.* at 204.

On October 9, 2019, Phillips met with Downie for a hospital discharge follow-up visit. *Id.* at 24. Phillips represented that she had been admitted to Niagara Falls Memorial Medical Center to treat severe hyperbilirubinemia with risk of hepatic failure. *Id.* The hospital discharged her on October 4, 2019, with a Hepatitis A diagnosis. *Id.* She complained of sores on her face and forearms. *Id.* Downie instructed her to make an appointment with a different medical provider to assess and treat her Hepatitis A. *Id.* at 25. Her gastrointestinal symptoms and jaundice had improved. *Id.*

On November 5, 2019, Phillips went to Niagara Falls Memorial Medical Center for a medication management appointment. *Id.* at 337. Phillips stated that she had not taken her medications since July but was "now ready to take medications as she

believe[d] medications would be helpful for her." *Id.* Phillips reported that she was hyperverbal, irritable, agitated, oversensitive, and hypersensitive and had a fluctuating mood. *Id.*

On November 6, 2019, Phillips met with Downie for a follow-up visit to review lab work. *Id.* at 27. Phillips reported that her skin lesions had gone away and no longer itched. *Id.* She denied having any side effects related to her newly prescribed medications. *Id.* She was assessed with anemia and hypercholesterolemia. *Id.* at 28. Additional lab work was ordered. *Id.*

On November 19, 2019, Phillips went to Niagara Falls Memorial Medical Center for a medication management appointment. *Id.* at 335. Medication adjustments were made to improve her sleep and anxiety. *Id.* Phillips reported that the medications had improved her depression. *Id.* at 336.

On December 17, 2019, Phillips went to Niagara Falls Memorial Medical Center for a medication management appointment. *Id.* at 332. Phillips reported that the previous medication adjustment was "causing her to feel as though she [was] missing periods of time." *Id.* That medication was discontinued at Phillips's request. *Id.* Phillips also complained that she was "very tearful" and "argumentative." *Id.* at 332–33. Another medication adjustment was made to help manage her anxiety. *Id.* at 333.

On December 26, 2019, Phillips went to Niagara Falls Memorial Medical Center for a medication management appointment. *Id.* at 330. Phillips reported that her medications were not "completely managing her anxiety," but her mood was

otherwise "not too bad." *Id.* Her medications were adjusted to improve her anxiety. *Id.* She was observed to be "much less anxious than in previous visits," and she was "calmer and her mood appear[ed] to be more stable." *Id.* at 331.

At some point in January 2020, Phillips received lab work that indicated she had mild anemia and mild elevated AST and ALT. ECF No. 8-1 at 438.

On January 23, 2020, Phillips went to Niagara Falls Memorial Medical Center for a medication management appointment. ECF No. 8-2 at 328. She reported that her medication adjustment has helped her "feel calmer," and she denied having any symptoms of depression. *Id.* She reported that she was "pretty happy." *Id.*

On April 23, 2020, Phillips went to Niagara Falls Memorial Medical Center for a medication management appointment. *Id.* at 326. She reported feeling "more anxious and more nervous" because of COVID-19 and "current life stressors." *Id.* She complained about sleeping difficulties but denied nightmares. *Id.* She also denied depressive and psychotic symptoms. *Id.*

On June 18, 2020, Phillips went to Niagara Falls Memorial Medical Center for medication management and assessment. *Id.* at 323. Phillips had not taken her medications for thirty days, but she stated her medications had previously helped. *Id.* Phillips stated she missed her last appointment because her prior partner had assaulted her. *Id.* She complained of nightmares, anxiety, and difficulty sleeping. *Id.*

On June 29, 2020, Phillips went to the Golisano Center to establish a new primary care doctor. ECF No. 8-1 at 438. Phillips complained of a month-long rash on her arms and legs. *Id.* The initial provocation of the rash was "attributed to anxiety."

*Id.* Phillips received lab work and medication for the rash. ECF No. 8-2 at 31. Lab work was also ordered to follow up on her anemia. *Id.*

On July 20, 2020, Phillips returned to the Golisano Center with continued complaints of a rash. ECF No. 8-1 at 441. Her rash appeared to have improved since the prior visit, and she was instructed to follow up with dermatology. *Id.* at 442. Phillips also complained of right hip pain following a trip and fall two weeks before. *Id.* at 441. Imaging of her right hip was ordered. *Id.* Previous lab work indicated that Phillips was slightly anemic and had elevated MCV, MCH, RDW, ESR, CMP, AST, and ALT. *Id.*

On July 21, 2020, Phillips went to Niagara Falls Memorial Medical Center for medication management and an assessment. ECF No. 8-2 at 320. She reported that her medications had improved her nightmares, sleep, and mood. *Id.* at 321. She denied issues with her sleep, appetite, or anxiety, and she denied experiencing any psychotic symptoms. *Id.*

On September 23, 2020, Phillips was admitted to Kaleida Health. ECF No. 8-1 at 377. Phillips's fiancé reported that Phillips "lost consciousness and [] had full body shaking." *Id.* at 381. Phillips reported a "similar episode roughly 2 weeks ago" and stated she did not recall either event. *Id.* Each episode purportedly lasted one minute. *Id.* Phillips described "feeling tired and 'going to sleep' during the episodes. *Id.* at 399. Phillips believed she may have experienced urinary incontinence during the first episode but not the second. *Id.* at 381. While at the emergency room, Phillips

"suffered an additional tonic-clonic seizure" that "last[ed] approximately 20 seconds." *Id.* Phillips was further observed to be "significantly hypokalemic." *Id.* at 381, 413.

CT scans of her head and cervical spine were both unremarkable. *Id.* at 381, 393–94. Her chest X-ray was normal. *Id.* at 393. Her urine toxicology screen "was presumptively positive for opioids," and Phillips indicated that she had taken a Vicodin the day before to treat a headache. *Id.* at 381, 396. She had a "borderline" electrocardiogram ("ECG"). *Id.* at 408. An electroencephalogram ("EEG") was "consistent with a mild cerebral dysrhythmia." *Id.* at 409. No "[e]pileptiform activity" or "[c]linical and electrographic seizures" were observed during the EEG. *Id.* Her brain MRI was also normal. ECF No. 8-2 at 63.

During her stay, Phillips indicated she had been vomiting for the past six months, and her vomiting had worsened over the past few weeks. ECF No. 8-1 at 386. She denied fever, chills, unilateral weakness, and vision changes. Still, she admitted to occasional chest pain when anxious, orthopnea, occasional numbness and tingling in her right upper extremity, snoring, and random incontinence with coughing or exertion. *Id.* Phillips reported that she had fallen two weeks before, and she admitted to having a rash for the past few weeks. *Id.*

Phillips did not have any seizures overnight, and she reported feeling well. ECF No. 8-1 at 400. She denied fever, chills, weakness, and numbness. *Id.* Phillips was believed to have experienced "new-onset seizures provoked seizure in the setting of metabolic abnormalities." *Id.* at 401. She was instructed to follow up with neurology, advised of seizure precautions, and discharged. *Id.* at 381, 401–02.

On October 14, 2020, Phillips presented to Niagara Falls Memorial Medical Center with complaints of nausea, vomiting, diarrhea, and abdominal pain. *Id.* at 469 & ECF No. 8-2 at 171. She reportedly "felt discomfort on deep palpation" of her abdomen. *Id.* at 469, 471. She also complained of itchy skin and anxiety. *Id.* at 469. She was diagnosed with abdominal pain, vomiting, and hypokalemia. *Id.* at 472.

On October 16, 2020, Phillips went to Niagara Falls Memorial Medical Center for medication management and a psychiatric assessment. ECF No. 8-2 at 317. Her anxiety and bipolar disorder had improved. *Id.* Phillips denied manic, hypomanic, or depressive symptoms but reported "anxiety related to the new health concerns." *Id.* at 318.

On December 9, 2020, Phillips presented to the Niagara Falls Memorial Medical Center emergency department with complaints of nausea, vomiting, diarrhea, cough, and muscle aches. *Id.* at 11. Phillips was hypoxic and admitted for further evaluation and treatment. *Id.* at 12. Phillips received a CT of her chest, abdomen, and pelvis. ECF No. 8-1 at 465. Her chest CT was unremarkable. *Id.* The CT of her abdomen and pelvis was indicative of a hiatal hernia and fatty liver with hepatomegaly. *Id.* at 465–66. Phillips was afebrile without symptoms. ECF No. 8-2 at 12. Phillips was discharged on December 12, 2020. *Id.*

On December 14, 2020, Phillips returned to Niagara Falls Memorial Medical Center for treatment of her depression and anxiety. ECF No. 8-2 at 1. She indicated that she was doing "fairly okay" but was "feeling [] low and depressed lately." *Id.* She was prescribed an antidepressant. *Id.*

On December 23, 2020, Phillips went to the Niagara Falls Primary Care Center. ECF No. 8-1 at 444. Phillips reported that she had been recently discharged from the hospital because "she was having COVID symptoms with weakness and vomitting [sic]." *Id.* Phillips reported difficulty keeping liquids down. *Id.* The vomiting was suspected to be "secondary to structural/mechanical abnormality." *Id.* She was referred to gastroenterology for an upper gastrointestinal scope. *Id.*

On January 19, 2021, Phillips presented to Niagara Falls Physician Associates with complaints of vomiting. *Id.* at 480. She reported that she usually vomited directly after eating or within five minutes of eating. *Id.* No dysphagia, odynophagia, or gastrointestinal bleeding were observed. *Id.*

On January 28, 2021, Phillis received a panendoscopy with biopsies. *Id.* at 482. The procedure indicated that Phillips had a hiatal hernia, esophagitis with esophageal ulcer, and gastritis with gastric ulcer. *Id.*

On January 29, 2021, Phillips went to Niagara Falls Memorial Medical Center for a follow-up evaluation related to her depression and anxiety. *Id.* at 499. She reported that her "mood [was] pretty good," and she had no "new issues." *Id.* She complained that she was "sometimes confused and ha[d] poor memory." *Id.* However, on examination, Phillips was "not showing any problem with her orientation and her immediate recall [was] pretty good." *Id.* She also was not "showing any other cognitive impairment." *Id.* Her speech was "rational, coherent, clear, organized, and productive." *Id.* She described her mood "as stable and not

terribly depressed." *Id.* She was eating and sleeping "okay," and her nightmares had improved. *Id.* She had no psychosis or suicidal thoughts. *Id.*

On February 26, 2021, Phillips returned to Niagara Falls Physician Associates. *Id.* at 485. She reported that she was "feeling much better," was "able to eat," and "ha[d] put on weight." *Id.* The endoscopy biopsy showed intestinal metaplasia. *Id.*

On March 4, 2021, Phillips presented to Niagara Falls Primary Care Center with complaints of bilateral lower extremity swelling and shortness of breath with exertion. ECF No. 8-2 at 37. She also reported that "she often scratche[d] and pick[ed] at [her] skin" when sleeping. *Id.* Lab work and testing were ordered. *Id.* at 37–38.

On March 16, 2021, Phillips called 911 because she was vomiting and had a headache and blurred vision after falling and hitting her head. ECF No. 8-2 at 100, 128. Phillips's partner stated Phillips got back up after falling and then fell again, but Phillips reported she did not remember falling a second time. *Id.* Paramedics transported Phillips to Niagara Falls Memorial Medical Center. *Id.* at 100. At the hospital, Phillips received CTs of her head and cervical spine, which were normal. ECF No. 8-1 at 467. Her liver enzymes were elevated. ECF No. 8-2 at 133. She was diagnosed with a minor head injury and discharged. *Id.* at 125.

On March 25, 2021, Phillips went to the Niagara Falls Medical Center for medication management. *Id.* at 310. Phillips reported that her mood was "okay," but she had been "feeling restless and anxious" and was "worrying often about different issues," which kept "her up at night." *Id.* She continued to have vivid dreams but was

not having "any distressing nightmares." *Id.* Her appetite was fair. *Id.* She believed her "hair [was] falling out," and she was "feeling more nervous than usual." *Id.* Phillips appeared "somewhat restless but friendly and cooperative." *Id.* at 310–11. Her recent memory was "somewhat impaired, and Phillips seemed "irritable[] and on edge." *Id.*

On April 1, 2021, Phillips received another panendoscopy and biopsy. ECF No. 8-1 at 487. Her esophageal and gastric ulcers had healed. *Id.* She had mild gastritis and hiatal hernia. *Id.*

On April 8, 2021, Phillips returned to Niagara Falls Primary Care Center to review her lab work. ECF No. 8-2 at 41. Her cholesterol level was elevated, but her cardiac risk was low. *Id.* at 43. Her enzymes were also "trending down." *Id.*

On April 14, 2021, Phillips returned to Niagara Falls Physician Associates. ECF No. 8-1 at 489. Her esophageal biopsies were negative for Barrett's esophagus. *Id.* Phillips had lost twenty-two pounds since her last office visit. *Id.* She complained about diarrhea. *Id.* That same day, Phillips received an ultrasound of her abdomen because she had abnormal liver function tests. ECF No. 8-2 at 241. The ultrasound indicated she had an "[e]chogenic liver consistent with diffuse fatty infiltration." *Id.*

On April 15, 2021, Phillips went to the Niagara Falls Medical Center for medication management. *Id.* at 309. Phillips reported that "her anxiety ha[d] decreased," and she was not "worrying quite as much" or "feeling quite as restless." *Id.* Her anxiety had "improved to the point that she" was "able to go out to dinner with her significant other for the [first] time in many months." *Id.* Phillips was still

having difficulty sleeping and slept for approximately four hours each night. *Id.* She denied depression symptoms "other than feeling somewhat irritable and having low energy." *Id.*

On July 21, 2021, Phillips went to Cooper University Hospital to establish care. ECF No. 8-3 at 85, 88. Phillips complained of shortness of breath, palpitations, abdominal pain, diarrhea, nausea, vomiting, joint pain, headaches, depression, hallucinations, anxiousness, and insomnia. *Id.* at 91. During her examination, she had a "[d]epressed affect." *Id.* at 91–92. She was referred to psychiatry and therapy to treat her bipolar 2 disorder, PTSD, anxiety, and OCD. *Id.* at 93. She was also referred to a gastrointestinal doctor. *Id.*

On August 3, 2021, Phillips went to Cooper University Hospital for treatment of her bipolar 2 disorder, anxiety, and PTSD. ECF No. 8-2 at 436, 438. The overall severity score of her diagnoses was rated 5 out of 10. *Id.* at 438. Phillips reported that she had had a bad marriage, lost her house, and moved to a different state, where a new boyfriend had abused her. *Id.* at 439. She had since moved back in with her parents, but she stated she got "very anxious around them" because they frequently argued. *Id.*

During this session, Phillips stated she had five past suicide attempts and had a history of cutting herself. *Id.* at 445. She identified her traumas and stressors as emotional abuse from her ex-husband and physical abuse from her ex-boyfriend. *Id.* She stated she had been admitted for seven days in 2018 because of suicidal ideation. *Id.* Phillips complained of difficulties sleeping, increased appetite, and depressive

symptoms. *Id.* at 446. She denied suicidal ideation. *Id.* Her last manic episode was May 2021. *Id.* at 447. She reported that she sometimes saw "pattern[s] or shapes in patterns" or thought she would see "someone [] walking past a doorway." *Id.* She reported paranoia, excessive worry, restlessness, muscle tension, and poor concentration. *Id.* She said she feared embarrassment, humiliation, and criticism. *Id.* She denied panic attacks. She reported repetitive behaviors, such as washing, cleaning, checking, and praying or counting. *Id.* She recounted intrusive and avoidance symptoms, alterations in her cognitions and moods, hypervigilance, heightened startle response, difficulty concentrating, and difficulty sleeping when exposed to her past traumas. *Id.* at 448. She reported a history of disordered eating cycles but stated she was not currently binging or purging. *Id.* She denied any ADHD symptoms. *Id.*

During the mental status examination, Phillips was observed to be moderately restless. *Id.* at 453. She complained of depression, anhedonia, social isolation, anxiety, catastrophic thinking, excoriation, and post-traumatic stress symptoms. *Id.* Based on those symptoms, she was diagnosed with PTSD, bipolar II disorder, GAD, and "low suspicion of formal OCD." *Id.*

On August 10, 2021, Phillips presented to Cooper University Hospital with complaints of chronic diarrhea and weight gain. ECF No. 8-2 at 350. Medical providers suspected that the chronic diarrhea may be "related to lactose intolerance" but planned to do further testing. *Id.* at 364.

On August 18, 2021, Phillips presented to Cooper University Hospital with complaints of athlete's foot and joint pain. ECF No. 8-3 at 100, 102. She reported that her arthritic joint pain increased when closing her hands and going up steps. *Id.* at 103. She also complained of a hives outbreak on her arms. *Id.* She reported that her hypothyroidism had recently caused fatigue, weight gain, brittle nails, lightheadedness, and hair loss. *Id.* at 103–04. She complained of intermittent shortness of breath upon exertion and continued insomnia. *Id.* at 104. During her examination, Phillips indicated that some of her psychiatric medications made her feel "jittery" and caused more night terrors. *Id.* at 103.

On August 24, 2021, Phillips went to Total Family Solutions LLC ("Total Family"). ECF No. 8-2 at 393. Phillips stated that she had moved back to New Jersey from New York after experiencing physical abuse. *Id.* She reported "having a hard time readjusting to normal life again." *Id.* She wanted to manage her anxiety so that she could return to work in the future. *Id.* at 394. The expected length of treatment was six to nine months. *Id.* at 488. She purportedly could not "work due to social anxiety" and was "applying for SSD for the second time." *Id.*

On August 31, 2021, Phillips returned to Total Family to determine a mutual treatment plan. *Id.* at 396. Phillips reported "responses of intense fear, helplessness, or horror to the traumatic event," "disturbances in sleep," "excessive and/or unrealistic worry that [was] difficult to control," "[i]ntrusive, recurrent, and unwanted thoughts, images, or impulses," "[i]ndebtedness and overdue bills," and "loss of income." *Id.* at 398.

On September 3, 2021, Phillips went to Cooper University Hospital for a follow-up medication management visit. *Id.* at 456, 459. The severity score for her bipolar 2 disorder, PTSD, and anxiety was rated as a four out of ten. *Id.* at 458. She reported that her sleep had been "ehh," and her appetite had been okay. *Id.* at 459. She had not had many depressive symptoms and denied suicidal ideation. *Id.* She denied a new manic episode. *Id.* at 460. She still experienced paranoia. *Id.* With respect to her anxiety, she had been experiencing "more nervousness recently than anything." *Id.* She was still engaging in repetitive behaviors and experiencing intrusive symptoms, avoidance symptoms, alterations in cognitions/moods, and arousal/reactivity when exposed to her traumas. *Id.* at 460–61. She was not in a disordered eating cycle and had been working on intuitive eating with her therapist. *Id.* at 461. Phillips was observed to have "improved since [her] last visit [due to] recent positive life events and starting individual therapy." *Id.* at 465.

On September 22, 2021, Phillips went to Cooper University Hospital for a primary care follow-up visit. ECF No. 8-3 at 119, 121. Lab work indicated that her thyroid level was good, and she reported decreased fatigue. *Id.* at 121. She indicated that medication had helped with her hand pain, but she was still unable to open twist caps during the daytime because of the pain. *Id.* at 121–22. The severity of the pain also reportedly caused her to wake up in the middle of the night. *Id.* at 122. During her physical examination, she had numerous sores on her arms. *Id.* at 123. Phillips was referred to physical therapy to address her hand pain and weakness. *Id.* at 124.

On October 4, 2021, Phillips went to Cooper University Hospital for a follow-up medication management visit. ECF No. 8-2 at 468, 471. Phillips indicated that her anxiety had worsened, and she was "tearing [her] skin up." *Id.* at 471. She had "several small . . . scabs with mild redness" on her arms and legs. *Id.* She denied hypomania episodes. *Id.* She reported "a small improvement [of her PTSD symptoms] with individual therapy." *Id.* She had been "going out more" and "taking more walks." *Id.* She continued to have difficulty sleeping. *Id.* Her appetite was good. *Id.* She reported depressive symptoms. *Id.* She denied suicidal ideation. *Id.* at 472. She had not experienced mania recently. *Id.* She continued to feel nervous and reported that her anxiety and excoriation had "been higher since [her] social security disability denial." *Id.* She continued to experience PTSD symptoms. *Id.* at 472–73. She was not in a disordered eating cycle. *Id.* at 473. She had improved overall since her last visit, but her anxiety and excoriation had both worsened. *Id.* at 477. She was observed to be moderately restless. *Id.* at 477.

On October 6, 2021, Phillips went to Cooper University Hospital to evaluate her seizures. ECF No. 8-2 at 402, 405. She reported that the seizures occurred in the evening or overnight without warning. *Id.* at 405. Her most recent seizure had occurred on September 27, 2021, when she woke up on the floor next to her bed. *Id.* She did not seek medical care for that seizure. *Id.* Before that, she had had a seizure in August 2021. *Id.* She denied biting her tongue, urinary incontinence, or staring spells. *Id.* She was diagnosed with generalized tonic-clonic seizure and nonintractable epilepsy without status epilepticus. *Id.* at 411.

On October 6, 2021, Phillips went to Cooper Neurology to establish care as a new patient. ECF No. 8-3 at 239–40. She was diagnosed with generalized tonic-clonic seizure and non-intractable epilepsy without status epilepticus, unspecified epilepsy type. *Id.* at 240.

On October 11, 2021, Phillips received her annual screening mammography at Cooper University Hospital. ECF No. 8-2 at 426. The mammogram was negative. *Id.*

On November 8, 2021, Phillips went to Cooper University Hospital for a follow-up medication management visit. ECF No. 8-2 at 430–32. Phillips reported that she had been picking her skin and was anxious when she left the house. *Id.* at 432. She was having nightmares and was hypervigilant at night. *Id.* She had been sleeping better, and her medication had provided some itch relief at night. *Id.* Her depression was not "as bad," but she was not following through with plans. *Id.* She had low mood, lack of interest, and low energy. *Id.* She did not have any suicidal ideation. *Id.* at 432–33. During the examination, Phillips was mildly restless. *Id.* at 441. She had improved moderately since her last visit. *Id.* at 442.

On December 7, 2021, Phillips presented to Cooper University Hospital with complaints of a productive cough, wheezing, chest tightness, congestion, sore throat, sneezing, and diarrhea. ECF No. 8-3 at 130, 132–33. She was assessed with bronchitis and acute non-recurrent maxillary sinusitis. *Id.* at 135.

On December 20, 2021, Phillips presented to Cooper University Hospital for continued treatment of her mental health disorders. *Id.* at 30, 32. She reported that her anxiety was "high with the holidays," and she had been feeling down because of

her recent sickness. *Id.* She believed one of her medications had helped keep her "mood more stable," and she had "noticed being more calm, less irritable." *Id.* Her skin picking had improved. *Id.* at 33. She had not had any "major mood episodes since [her] last visit." *Id.* She still had difficulty sleeping and had nightmares two to three times a week. *Id.* Her appetite had been "fine before [she] got sick." *Id.* She continued to have PTSD symptoms. *Id.* at 34. During her physical examination, she was observed to be anxious. *Id.* at 35. She had improved since her last visit. *Id.* Her mood and anxiety were "mildly exacerbated by [her] bronchitis but overall improved," and she had been "working hard in therapy to address PTSD, anxiety, [and] excoriation symptoms." *Id.*

On December 21, 2021, Phillips returned to Total Family. ECF No. 8-2 at 490. She outlined her goals for treatment. *Id.* at 490–93. Her appointments were to occur weekly, and her treatment was expected to last six to nine months. *Id.* at 494.

On December 22, 2021, Phillips presented to Cooper University Hospital with complaints of malaise, congestion, sore throat, cough, and sputum production. ECF No. 8-3 at 140, 142–43. She said her bronchitis treatment initially provided some relief, but her cough returned. *Id.* at 143. She was using a rescue inhaler twice a day. *Id.* She also reported that she was smoking two cigarettes each day. *Id.* She had diminished breath sounds. *Id.* at 144. She was assessed with bronchitis and allergic rhinitis with post-nasal drip. *Id.* at 145.

On January 4, 2022, Phillips returned to Total Family for treatment of her anxiety, depression, PTSD, and skin picking. *Id.* at 2. She reported "severe stress due

to economic, occupational, housing, and legal concerns and moderate stress due to family, relationship, and health concerns." *Id.* She complained of severe feelings of hopelessness and self-injurious behaviors. *Id.* Her treatment goals were to leave the house, enjoy activities, improve her self-esteem, and stop picking her skin. *Id.*

On January 25, 2022, Phillips created an outpatient treatment plan with Total Family to treat her PTSD, generalized anxiety disorder, and major depressive disorder. *Id.* at 171. Her goals for her depression were to "have the motivation and drive to get up in the morning and complete normal" activities and "establish boundaries with her relationships and work on having healthy people in her life." *Id.* at 171–72. Her goals for her PTSD were to "work on establishing relationships with important people in her life and making friends" and "connect with friends in her past and also begin to have relationships." *Id.* at 172. Her goals for her anxiety were to be capable of controlling her emotions and reactions when looking at her surroundings and herself and to no longer worry about anxiety. *Id.* at 173.

On January 31, 2022, Phillips went to Cooper University Hospital for treatment of mental health disorders. *Id.* at 39, 41. She reported that her mood had been "alright." *Id.* at 42. She was not having nightmares anymore but was "having weird uncomfortable dreams." *Id.* She believed her medications had helped her mood and social anxiety. *Id.* She had also been "doing better at not picking." *Id.* She was sleeping about six hours a night but felt "like [she was] not getting any rest" because her dreams were so vivid. Her appetite had not been bad, but she

reported occasionally "eating out [of] boredom or anxiety." *Id.* Her depressive symptoms had improved, and she had "been texting with [her] friends a lot." *Id.* She denied feelings of hopelessness and suicidal ideation. *Id.* She remained anxious when she left the house. *Id.* She still experienced PTSD symptoms. *Id.* at 43.

On February 1, 2022, Phillips presented to Cooper University Hospital with complaints of a cough, shortness of breath with mild exertion, wheezing, chest pain, palpitations, seizures, and headaches. *Id.* at 151, 154–55. She was assessed with mild intermittent asthma without complication, seizures, and bipolar II disorder. *Id.* at 157. An MRI of her brain was unremarkable. ECF No. 8-2 at 426.

On March 2, 2022, Phillips returned to Total Family. ECF No. 8-3 at 284. Phillips indicated that she overate when bored or anxious. *Id.* at 289. She wanted "to get out more and be less anxious around people" and to "[d]eal with night terrors and eliminate or decrease frequency." *Id.* at 285. During the session, Phillips "appeared comfortable . . . despite feeling nervous to meet new therapist." *Id.* at 289. She was observed to have obsessions and/or compulsions and poor body image. *Id.*

On March 3, 2022, Phillips went to Cooper Neurology for a follow-up evaluation for her convulsions and to review her recent EEG and MRI. *Id.* at 211, 219. Phillips reported that she had had a "staring spell with loss [of] awareness" for approximately two minutes in February 2022. *Id.* at 219. Phillips also indicated that she had been forgetful and could not recall recent conversations. *Id.* Her MRI and EEG were normal. *Id.*

On March 23, 2022, Phillips presented to Cooper Primary Care with complaints of congestion, sore throat, cough, shortness of breath, wheezing, and anxiety. ECF No. 8-4 at 76, 84. She indicated she needed to take albuterol after going up the stairs and during long walks. *Id.* at 84. She was assessed with mild persistent asthma without complication, hand pain, foot pain, and anxiety. *Id.* at 86.

On April 5, 2022, Phillips was admitted to the hospital after having a generalized tonic-clonic seizure. ECF No. 8-3 at 446. Phillips reported that she hurt her right foot during this seizure episode. *Id.* at 447. Phillips had another seizure while at the hospital and was admitted for further evaluation and treatment. *Id.* at 446. Testing indicated that she had metabolic acidosis and elevated anion gap, both of which were resolved by the time of discharge. *Id.* An X-ray of her foot did not indicate that she had any fractures. *Id.* at 447. Phillips was discharged on April 6, 2022. *Id.* at 269.

On April 7, 2022, Phillips was transported to the Lourdes Camden Emergency Department after having a seizure. ECF No. 8-3 at 276. In the emergency department, she had a "witnessed tonic-clonic seizure followed by a brief hypnotic episode." *Id.* at 285. Phillips complained of ankle pain and injury from her last seizure activity. *Id.* at 278. She was concerned that an increased dosage of one of her medications was causing her seizure symptoms. *Id.* at 285. During her physical examination, she had a tremor. *Id.* at 288. Her ECG was abnormal. *Id.* at 298. She was discharged that same day in stable condition. *Id.* at 285.

On April 8, 2022, Phillips went to Cooper Primary Care. *Id.* at 58. Phillips reported that she had had four seizures that week and had been admitted to the hospital. *Id.* at 59. She had bitten her tongue and injured her right ankle and neck during the seizure episodes. *Id.* She complained that the tip of her tongue was infected and painful, which made eating difficult. *Id.* at 66–67. She also complained that it was "painful to walk with her ankle." *Id.* at 67. Upon examination, her tongue looked infected. *Id.* She was assessed with tongue infection, seizure, and acute right ankle pain. *Id.* at 66.

On April 18, 2022, Phillips went to Cooper Primary Care. *Id.* at 7. She complained of shortness of breath with mild exertion, cough, wheezing, chest pain, palpitations, seizures, and headaches. *Id.* at 17. She also complained of right foot pain. *Id.* at 45. On examination, she had "limited ability to bear weight," even with a boot on her right foot. *Id.* at 46. *Id.* She had pain, tenderness, swelling, and bruising along the dorsum of her midfoot and metatarsals one through three. *Id.* She was assessed with a possible stress fracture of her right foot. *Id.* at 47.

On April 19, 2022, Phillips and Total Family updated Phillips's treatment plan to incorporate additional objectives and interventions, such as acceptance and commitment therapy strategies, relapse prevention, and PCT psychoeducation. ECF No. 8-3 at 175–78.

On April 26, 2022, Phillips went to Cooper Primary Care for a medication refill and MRI referral for her right foot. *Id.* at 438–39. She reported that her right foot still hurt, and she rated the pain as a nine out of ten. *Id.* at 447. Upon examination,

her foot was swollen and painful on plantar flexion, dorsiflexion, inversion, and eversion. *Id.* at 448. An MRI was ordered for her right foot pain, and Phillips was instructed to wear a boot. *Id.* at 449.

At some point in May 2022, Phillips underwent a five-day EEG. *Id.* at 337. The EEG was abnormal "due to focal slowing and sharp waves over the frontocentral and temporal areas bilaterally." *Id.*

On May 4, 2022, Phillips had a seizure witnessed by her mother, but she did not seek medical treatment. *Id.* at 269.

On May 18, 2022, Phillips presented to Cooper Primary Care for a follow-up visit with complaints of joint pain and headaches. *Id.* at 422, 428. Phillips complained of joint pain and headaches. *Id.* at 428. An appointment was scheduled with orthopedics to determine if Phillips needed to continue wearing a boot on her right foot. *Id.* at 428–29.

On May 31, 2022, Cooper Bone and Joint determined that Phillips had two fractures and a Lisfranc injury in her right foot. *Id.* at 269. She was instructed to wear an aircast. *Id.* Phillips represented that the Lisfranc injury "may take over a year to heal or may be a permanent injury." *Id.*

On June 7, 2022, Phillips had a seizure during the nighttime, but she did not seek medical treatment. *Id.* at 269.

On June 15, 2022, Phillips went to Cooper Neurology for a follow-up evaluation of her seizures. *Id.* at 187, 195. Her psychological and neurological examinations showed no abnormal or remarkable findings. *Id.* at 196–97.

On June 21, 2022, Phillips had a seizure witnessed by her mother, but she did not seek medical treatment. *Id.* at 269.

On July 14, 2022, Phillips had a seizure during the nighttime, but she did not seek medical treatment. *Id.* at 270.

On July 26, 2022, Phillips returned to Total Family. *Id.* at 179. Phillips had made significant progress in controlling her emotions and reactions and moderate progress in decreasing her agitation and anxiety and experiencing her fluctuations in anxiety as normal. *Id.* at 180. Phillips had made minor or no progress with feeling connected to important people. *Id.* at 181. She had made moderate progress in increasing her feelings of engagement and connection to others and significant progress in resolving negative physical and emotional reactions to traumatic events. *Id.* She had made moderate progress in reducing distressing dreams and nightmares. *Id.* at 181–82.

On July 31, 2022, Phillips fractured her left ankle. *Id.* at 269. Cooper Bone and Joint placed her in an aircast for her left ankle. *Id.* Cooper Bone and Joint was treating her for the injuries to both her right foot and left ankle, and Phillips indicated that she was going to physical therapy twice a week. *Id.*

On August 3, 2022, Phillips had a seizure upon waking, but she did not seek medical treatment. *Id.* at 270.

On September 5, 2022, Phillips had a seizure witnessed by her parents, but she did not seek medical treatment. *Id.* at 270.

On September 13, 2022, Phillips went to Cooper Primary Care for a follow-up visit. *Id.* at 475–76. She had recently fractured her left ankle and was placed in a boot. *Id.* at 484. She reported difficulty using stairs. *Id.* She also indicated that she would sometimes use her foot to turn herself when sleeping and would wake up "with extreme pain." *Id.* Phillips stated that she had "been under a lot of stress, and she had trouble sleeping." *Id.* She had dark marks on her arms and legs. *Id.* She had been anemic on her last blood work. *Id.* She reported that her menstrual cycles were irregular and that she had not been eating because of stress. *Id.* She purportedly had "stomach issues" and did not "usually have solid bowel movements." *Id.* Her blood pressure was slightly elevated, and she was "in pain and stress." *Id.* She complained of "a little shortness of breath," headaches, and dizziness. *Id.* at 484–85. She also complained that her acid reflux symptoms were "getting stronger" and that she had back pain. *Id.* at 485. She sought a referral to a podiatrist to treat a fungal infection on her toenails. *Id.* During the examination, Phillips appeared sad. *Id.* at 486.

On October 6, 2022, Phillips had a seizure. *Id.* at 270, 337. During that seizure, Phillips was staring, her right arm and head were shaking, she kept repeating that she was hungry, and her eyes were glazed. *Id.* at 337. Phillips indicated that she had been aware of her surroundings during the episode and did not lose consciousness. *Id.*

On October 20, 2022, Phillips went to Cooper Specialty Care for a follow-up evaluation of her seizures. *Id.* at 329, 337. Based on the May EEG and Phillips's

recounting of her symptoms, Cooper Specialty Care believed that "nonepileptic events comprise[d] at least a part of her presentation." *Id.* at 340.

On November 20, 2022, Phillips and Total Family updated Phillips's treatment plan. *Id.* at 184. Phillips had made significant progress in controlling her emotions and reactions. *Id.* She had made moderate progress in decreasing her agitation and anxiety but still struggled "with intense anxiety that causes skin-picking." *Id.* She had made moderate progress in experiencing fluctuations in her anxiety as normal. *Id.* She had made moderate progress in feeling connected to important people within her family, friends, and co-workers, but she reportedly still struggled "with establishing congruent relationship with [her] father." *Id.* at 185. She had made moderate progress in increasing feelings of engagement and connection to others. *Id.* She had made moderate progress in resolving negative physical and emotional reactions to traumatic events to live her life fully. *Id.* at 185–86. She had made moderate progress in reducing distressing dreams and nightmares but continued to "struggle with stressful reminders that affect week-to-week functioning." *Id.* at 186.

On November 24, 2022, Phillips reported that a friend heard her fall out of bed and found Phillips face down and disoriented. *Id.* at 270. Phillips stated that later that afternoon she "had a severe panic attack that caused [her] to black out" and harm herself. *Id.* Phillips called 911 with complaints of depression and suicidal thoughts. ECF No. 8-4 at 323, 326–27. She had superficially cut her thighs and arms. *Id.*

Phillips was taken by ambulance to the Jefferson Health Emergency Department. *Id.* at 323. She admitted to drinking alcohol but denied taking any street drugs. *Id.* She reported that drinking alcohol worsened her depression and anxiety, so she called EMS "for her safety" when she "recognized that she was becoming more inebriated." *Id.* at 362. An EKG showed sinus tachycardia. *Id.* at 336. She was diagnosed with alcoholic intoxication without complication. *Id.* at 323. She was discharged the next day. *Id.*

On December 13, 2022, Phillips went to Cooper Primary Care for a follow-up visit. ECF No. 8-3 at 455–56. Phillips reported that she had been "having a lot of anxiety for the last 2 months." *Id.* at 464. She had also been "doing more skin picking." *Id.* She reported that she had her asthma under control but had "intermittent wheezing at night if she ha[d] active days." *Id.* She used her "Flovent inhaler twice a day" and her "albuterol inhaler as needed." *Id.* She complained of heartburn. *Id.* She had lesions on both arms. *Id.* at 465.

On December 20, 2022, Phillips reportedly "felt odd," and her mother observed Phillips's hands and head shaking. *Id.* at 270. Phillips purportedly could not answer questions clearly. *Id.* She did not remember this incident. *Id.*

C. <u>Administrative Hearing</u>

At the administrative hearing, Phillips testified as follows. She completed one year of college but did not receive a degree or certification. ECF No. 8-1 at 48. She was not working but received a food and cash allowance from New Jersey's social

services. *Id.* She also received money from her parents, with whom she was living at the time of the hearing. *Id.* She was divorced and had two children. *Id.*

Phillips previously worked as a state court judicial clerk. *Id.* at 51. For her first five years in that position, she completed clerical work. *Id.* at 52. She was later promoted to a judge's assistant, which required her to process forms and other paperwork. *Id.* She started to miss work because of "issues at home" and eventually took temporary leave and received temporary disability benefits because of her mental health. *Id.* She did not return to that position. *Id.* at 52. She later moved to New York, and, in 2019, worked part-time as a cashier at Dollar General. *Id.* at 50–51, 53. She believed working at Dollar General would not be "as stressful," but she testified that this position "didn't work out either." *Id.* at 53. She then moved back to New Jersey. *Id.* at 53–54. She had not looked for work because she was focused on getting her "mental health and [her] seizures and everything under control." *Id.*

Phillips then discussed her alleged disabilities. She testified that her bipolar disorder, PTSD, night terrors, seizures, skin picking, asthma, low thyroid, anxiety, and depression affected her ability to work. *Id.* at 54–55, 59–60. Her PTSD made her afraid of "going out in places" and caused constant paranoia; her seizures made her nervous because the cause was still unknown; her anxiety caused neurotic dermatitis, which made her "hate [] being around people"; and her depression and anxiety made it hard for her to leave her house. *Id.* at 54–55. She further testified that she had previously had substance abuse problems. *Id.* at 55. Phillips reportedly did not go to the grocery store. *Id.* at 60. Her mom cooked meals because Phillips "would forget to

[] turn off the stove and stuff." *Id.* She had one friend who would "come over and visit with [her] sometimes." *Id.* at 61. She did not have a romantic relationship. *Id.*

Phillips's attorney then examined her. Phillips testified she went on Family Medical Leave Act leave because the thought of going into work sent her "into panic mode," and she "would freeze up and not be able to get out of bed." *Id.* at 66. She had difficulty falling asleep because of "racing thoughts." *Id.* at 67. When she would fall asleep, she would "have [] terrible night terrors and [] wake up, on average, [] about six times a night." *Id.* As a result, she was fatigued during the day. *Id.* She would get anxious when she tried to nap. *Id.* During the day, she watched television, talked with her parents, or looked outside. *Id.* at 68. She testified that her anxiety worsened her ability to focus. *Id.* She reported that her medications made her woozy and groggy. *Id.* at 69. Her "daytime" medications made her jittery and caused her hands to shake. *Id.* One medication reportedly caused her to "blackout," and she had stopped taking it. *Id* at 70.

The ALJ then examined the VE. *Id.* at 71–73. The VE classified Phillips's past work as an administrative assistant as sedentary and skilled but performed as medium and her past work as a court clerk as sedentary and skilled but performed as light. *Id.* at 71.

The ALJ asked the VE to assume that a hypothetical individual of the same age, education, and work background as Phillips had the following limitations: occasionally able to climb stairs and ramps but never ropes, ladders, or scaffolds; never crawl; avoid exposure to unprotected heights and moving and dangerous

machinery; avoid extremes in temperature; avoid concentrated exposure to pulmonary irritants; could understand and carry out instructions for simple routine tasks and maintain concentration, persistence, and pace in the performance of those tasks for two-hour increments; and able to relate to coworkers, supervisors, and the public on a superficial interactional basis defined as the exchange of work-related information or the handing off of products or materials. *Id.* at 72. The VE testified that this individual would be able to work as a garment folder, marker, or photocopying machine operator. *Id.* at 73.

The ALJ then modified the hypothetical to assume that the individual would also be unable able to meet competitive standards and maintain regular attendance and be punctual within customary usual strict tolerances in sustaining an ordinary routine without special supervision in a normal workday or workweek without interruptions from psychologically-based symptoms; be unable to perform at a consistent pace without an unreasonable number and length of rest periods in dealing with the stress of semi-skilled and skilled work and travelling in unfamiliar places; and would be absent more than four days per month. *Id.* The VE testified this person would not be able to work in the regional or national economy. *Id.* at 74.

Phillips's attorney then examined the VE. *Id.* at 74–76. The VE testified that the ability to accept and respond appropriately to criticism from supervisors is required to work as a garment folder, a marker, or photocopying machine operator. *Id.* The VE additionally testified that missing two full eight-hour workdays per month

would eliminate 90% of all jobs and that any time missed beyond that would eliminate all jobs. *Id.* at 75.

### D. ALJ's Findings and Conclusions

The SSA promulgated a five-step sequential process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a). This process requires the ALJ to determine whether a claimant (1) is engaging in substantial gainful activity; (2) has a medically determinable severe impairment or a combination of impairments that is severe; (3) has an impairment or combination of impairments listed in or medically equivalent to those listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) has the residual functional capacity to perform her past relevant work; and (5) has the residual functional capacity, age, education, and work experience to perform any other type of work. 20 C.F.R. § 404.1520(a)(4)(i)–(v).

A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)). To be entitled to benefits, an applicant bears the initial burden of showing he is disabled. Under the regulations, this means the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant can perform work in the national economy. *See Greenspan*, 38 F.3d at 237.

Here, the ALJ found that Phillips had not engaged in substantial gainful activity since her amended alleged disability onset date. ECF No. 8-1 at 18. At Step

Two, the ALJ found Phillips had the following severe impairments: GAD, bipolar disorder, PTSD, seizure disorder, and asthma. *Id.* But at Step Three, the ALJ found that Phillips did not have an impairment or combination of impairments that met or medically equaled one listed in Appendix 1. *Id.* at 18–20.

The ALJ determined that Phillips had the residual functional capacity to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [S]he can occasionally climb stairs and ramps, but never ropes, ladders or scaffolds. The claimant can never crawl and must avoid all exposure to unprotected heights and moving and dangerous machinery. She would have to avoid extremes in temperature and concentrated exposure to pulmonary irritants. The claimant would be able to understand and carry out instructions for simple routine tasks and maintain concentration[,] persistence[,] and pace in the performance of these tasks for two-hour increments over an eight-hour workday and 40-hour workweek. She would be able to relate to co-workers, supervisors and the public on a superficial interactional basis, being defined as the exchange of work-related information or the handing off of products or materials.

*Id.* at 20–21.

At Step Four, the ALJ found that Phillips did not have the residual functional capacity to perform her past relevant work. *Id.* at 27. At Step Five, the ALJ considered Phillips's age, education, and work experience and determined she had the residual functional capacity to work as a garment folder, marker II, or photo copying machine operator. *Id.* at 27–28.

Accordingly, the ALJ concluded that Phillips was not under a disability as defined in the SSA at any time from the amended alleged disability onset date through July 6, 2023, the date of decision. *Id.* at 28.

## II. Law and Analysis

### A. Scope of Review

A court's review of social security disability claims is "exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Boone v. O'Malley*, No. 23-40401, 2023 WL 9018388, at *1 (5th Cir. Dec. 29, 2023) (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)).

"When substantial evidence supports the ALJ's findings, these findings 'shall be conclusive' and must be affirmed." *Daigle v. Kijakazi*, No. 22-30721, 2023 WL 4501865, at *1 (5th Cir. July 12, 2023) (citing 42 U.S.C. § 405(g)). For the evidence to be substantial, it must be "more than a scintilla and less than a preponderance," and "of such relevance that a reasonable mind would accept it as adequate to support a conclusion." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

"[T]he substantial evidence test does not involve a simple search of the record for isolated bits of evidence which support the [Commissioner's] decision. [The Court] must consider the record as a whole, and the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). A court reviewing the Commissioner's decision "may not retry factual issues, reweigh evidence, or substitute [its] judgment for that of the fact finder." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983); *see*

*also Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981); *see also Daigle*, 2023 WL 4501865, at *1.

A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." See *Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

Here, Phillips argues remand is required because the ALJ failed to properly evaluate the opinion of Shane Cooper, APN, ("Cooper"). ECF No. 11.

**B. <u>Articulation Requirement for Evaluation of Medical Opinions</u>**

For claims filed on or after March 27, 2017, the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. *Jones v. Comm'r of Soc. Sec. Admin.*, No. 22-CV-01055, 2022 WL 3509035, at *7 (W.D. La. 2022), *report and recommendation adopted*, 2022 WL 3448676 (W.D. La. 2022) (citing 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a)).

Under the new regulations, rather than assigning weight to the medical opinions, the Commissioner must articulate "how persuasive" he finds the medical opinions. *See Jones*, 2022 WL 3509035, at *7 n.5 (citing 20 C.F.R. § 416.920c(b)). And the Commissioner's consideration of the persuasiveness of medical opinions is guided

by the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the opinion. *See Jones*, 2022 WL 3509035, at *7 n.5 (citing 20 C.F.R. § 404.1520c(c)(1)–(5); 20 C.F.R. § 416.920c(c)(1)–(5)).

"Supportability" and "consistency" are the most important factors. *See Jones*, 2022 WL 3509035, at *7 n.5 (citing 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2)). The ALJ must explain these two factors, but he need not expound on the remaining three unless he finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. *See Jones*, 2022 WL 3509035, at *7 n. 5 (citing § 416.920c(b)(2)–(3)). The fact that a medical source examined the claimant or specializes in an area germane to the claimant's medical issues are not primary or dispositive considerations in assessing the medical opinion. *See Jones*, 2022 WL 3509035, at *7 n.5 (citing 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c)).

The regulations direct an ALJ to consider a medical opinion's persuasiveness based on how much the objective medical evidence and medical source's explanation support the medical opinion and how consistent the medical opinion is with the evidence from other sources. *See Harris v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-00910, 2022 WL 421121, at *9 (W.D. La. 2022) (citing 20 C.F.R. § 416.920c(c)).

"Supportability" looks to "the objective medical evidence and supporting explanations presented by a medical source [] to support his . . . medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). "Consistency" looks to how "consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2).

"[A]n 'ALJ is not always required to do an exhaustive point-by-point discussion' of the evidence []he reviews." *Silva v. Kijakazi*, No. 22-51045, 2023 WL 3723628, at *1 (5th Cir. May 30, 2023) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). However, the ALJ's explanation "must 'enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence' and must not 'require the [c]ourt to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof.'" *Probst v. Kijakazi*, No. 22-CV-00286, 2023 WL 3237435, at *4 (W.D. Tex. May 3, 2023) (alteration original) (quoting *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021)). Courts in this circuit have found that this standard requires "a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Collar v. Comm'r of Soc. Sec.*, No. 22-CV-1026, 2024 WL 737306, at *6 (M.D. La. Jan. 22, 2024) (quotations omitted), *report and recommendation adopted*, No. 22-CV-1026, 2024 WL 735375 (M.D. La. Feb. 22, 2024).

### C. <u>The ALJ Properly Evaluated Cooper's Opinion When Determining Phillips's Residual Functional Capacity.</u>

In a mental impairment questionnaire, Cooper set forth several opined limitations. ECF No. 8-3 at 306–12. In relevant part, Cooper found that Phillips had

marked limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and adapting or managing herself. *Id.* at 310.

The ALJ considered Cooper's opinion as follows:

> Mr. Cooper completed a medical opinion on January 11, 2023 (Ex. B28F). He opined that the claimant was seriously limited to be unable to meet competitive standards for maintaining attention for two-hour periods, maintaining attendance, sustaining a routine, making work related decisions, completing a normal workday/workweek without interruption, dealing with supervisors, dealing with stress, setting goals, traveling to unfamiliar places, and dealing with stress from skilled and semi-skilled work (Id. at 5-6). Mr. Cooper opined that the claimant had marked limitations in all [Paragraph] B criteria, three or more episodes of decompensation, and would be absent from work more than four days per month (Id. at 7-8).
>
> Mr. Cooper's opinion regarding the claimant being able to handle short and simple instructions (See Ex. B28F) is persuasive, as it is consistent with the medical evidence of record. The claimant was diagnosed with generalized anxiety disorder, bipolar disorder, and PTSD and had signs and symptoms associated with those conditions (See Ex. B1F, B6F, B9F, B17F, B29F, B30F, B33F). However, in May of 2022, the claimant's mood, affect, and memory were normal and/or intact on examination (See Ex. B30F). In November of 2022, she ended up in the emergency room after not taking her medication, but after receiving treatment, her thought content and judgment were normal and/or intact and she was stable enough to be discharged (See Ex. B33F). Mr. Cooper's opinion regarding the claimant having marked limitations (See Ex. B28F) is unpersuasive, it is inconsistent with the treatment notes cited above. Furthermore, the claimant denied having problems getting along with other people (See Ex. B9E). In November of 2021, Mr. Cooper noted that the claimant's tandem gait, eye contact, speech, affect, thought content, thought process, and judgment were normal and/or intact and while her psychomotor activity had some mild restlessness, it was otherwise normal, she had shown moderate improvement in her condition, had no acute or safety concerns (See Ex. B17F).

ECF No. 8-1 at 26.

Phillips argues remand is required because the ALJ's evaluation of Cooper's opinion "is not supported by substantial evidence and fails to include a logical bridge between the evidence" and persuasiveness finding. ECF No. 11 at 2. The Court does not agree.

To begin, the ALJ explained why he found that Cooper's opined marked limitations were not supported by his own treatment notes.[1] Specifically, the ALJ cited Cooper's November 2021 treatment notes indicating, among other things, that Phillips had moderately improved, had no acute or safety concerns, had normal and/or intact speech, affect, thought content, thought process, and judgment, and had been more social with her parents. ECF No. 8-1 at 26. As such, the ALJ explained why he found that Cooper's opined limitations were not supported by Cooper's own treatment notes.

The ALJ additionally explained why he found Cooper's opinion inconsistent with other evidence of record. The ALJ cited Phillips's testimony that she got along with others. ECF No. 8-1 at 26. And the ALJ cited treatment notes finding that Phillips was alert, fully oriented, and had normal and/or intact thought content, judgment, mood, affect, memory, and judgment. *Id.* Therefore, the ALJ explained why he found that Cooper's opined limitations were not consistent with other evidence of

[1] Phillips argues the ALJ's reference to "treatment notes cited above," ECF No. 8-1 at 26, directs the Court to the record as a whole rather than specific records. ECF No. 14 at 1–2. Phillips relatedly argues that the ALJ "does not provide anything other than page numbers to support his arguments without explanation." *Id.* at 2. Both assertions are incorrect. As will be evident from the Court's discussion, the ALJ directed the Court to specific records and to specific findings in those records relied upon by the ALJ.

record. Because the ALJ adequately discussed both supportability and consistency when evaluating Cooper's opinion, the ALJ did not err.

Phillips suggests the ALJ "engage[d] in picking and choosing only those portions" of the record that supported the ALJ's position, and she directs the Court to evidence she believes contradicts the ALJ's findings. ECF No. 11 at 7–8. But this Court's role is not to reweigh the evidence. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The ALJ adequately articulated his persuasiveness findings. This Court will substitute neither its nor Phillips's opinion for that of the ALJ's.

And, in any event, "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and the ALJ's decision states explicitly that he considered the entire record in his decision." *Hammond v. Barnhart*, 124 F. App'x 847, 848 (5th Cir. 2005); *see also Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) ("The fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record."). The ALJ's failure to cite the specific records identified by Phillips does not mean he failed to consider them or that his persuasiveness finding was otherwise in error. *See Tomisha M. W. on behalf of T.M.W. v. Saul*, No. 18-CV-2357, 2020 WL 1513453, at *6 (N.D. Tex. Mar. 27, 2020) ("That the ALJ did not specifically mention the particular statements or pieces of evidence that Plaintiff points out on appeal does not discredit his findings.").

Moreover, the ALJ's persuasiveness finding is supported by substantial evidence. Treatment notes consistently documented that Phillips was able to

maintain her concentration, persistence, or pace. ECF No. 8-1 at 22–24 (citing treatment notes); *see also id.* at 103, 113; ECF No. 8-2 at 309, 409; ECF No. 8-3 at 318; & ECF No. 8-4 at 262, 286. Phillips's testimony and treatment notes similarly document that Phillips was able to engage in activities of daily living, socialize with others, and adapt or manage herself. The ALJ specifically cited testimony indicating that Phillips watched television with her parents, occasionally visited with a friend, went outside weekly, could count change, got along with family, friends, neighbors, authority figures, and others, and had never been fired or laid off because of issues getting along with others. *Id.* at 25. Additionally, Phillips had reported in November of 2021 "that she previously liked group therapy and that she had been more social with her parents." *Id.* at 26.

In sum, the ALJ adequately articulated his reasons for finding that Cooper's opined marked limitations were unpersuasive. The ALJ's finding is proper and adequately supported.

## III. Conclusion

Because the final decision of the Commissioner is supported by substantial evidence and no legal error was committed, IT IS RECOMMENDED that Phillips's appeal (ECF No. 1) be DENIED.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and

Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Monday, October 5, 2026.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE